UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAN COWAN, et al.,

   Plaintiff(s),    CASE NUMBER: 04-71143
              HONORABLE VICTORIA A. ROBERTS

and

BLUE CROSS BLUE SHIELD
OF MICHIGAN,

   Intervening Plaintiff(s),

v.

ARKEMA INC.,

   Defendant(s),

<u>CONSOLIDATED WITH</u>:
ROSE MILLER, et al.,

   Plaintiff(s),
              CASE NUMBER: 04-72564
              HONORABLE VICTORIA A. ROBERTS

v.

ARKEMA INC.,

   Defendant(s),
_____/

**ORDER DENYING PLAINTIFFS'
MOTION FOR RECONSIDERATION**

  This matter is before the Court on Plaintiffs' Motion for Reconsideration. On September 20, 2007, the Court entered an Order and Judgment granting Defendant Arkema, Inc.'s Motion for Summary Judgment against Plaintiffs Dan Cowan, Loretta

1

Little, Betty McGowan, Blair McGowan, and Rose Miller. All of the Plaintiffs, except Miller, ask the Court to reconsider its decision.

Eastern District of Michigan Local Rule 7.1(g)(3) provides for reconsideration if the movant demonstrates a palpable defect by which the court and the parties have been misled, and further demonstrates that correcting the defect will result in a different disposition of the case. "A 'palpable defect' is a defect which is obvious, clear, unmistakable, manifest, or plain." *Fleck v Titan Tire Corp.*, 177 F.Supp.2d 605, 624 (E.D. Mich. 2001). "[T]he court will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the court, either expressly or by reasonable implication." L.R. 7.1(g)(3).

Plaintiffs' complaint stemmed from a fire and explosion at Defendant's chemical production plant in Riverview, Michigan. Each Plaintiff lives in proximity to the plant and alleged that the chemicals released in the fire and explosion caused various respiratory injuries. Plaintiffs alleged state law claims of negligence and strict liability. The Court granted summary judgment to Defendant because it found that Plaintiffs failed to demonstrate *prima facie* that their injuries are due to their exposure to toxic levels of the released chemicals.

Plaintiffs assert that the Court's ruling suffers from errors of fact and law. First, Plaintiffs say the Court erred in finding that they did not "present some evidence from which the trier of fact can infer that they were exposed to harmful levels" of the released chemicals. Second, Plaintiffs say the Court erroneously applied the standard which applies to persons alleging long-term exposure to dangerous substances, rather than the standard appropriate for victims of a "one-time[,] catastrophic, highly toxic event."

2

Pl. br. at p. 13. There is no merit to either assertion.

Plaintiffs' first assertion is that the Court made a factual error when it "failed to give credence to the evidence, particularly the material handling sheets, the medical records, and the testimony of the expert witness, that any exposure to this toxic chemical will necessarily cause the symptoms that were undisputedly suffered by the Plaintiffs herein." Pl. br. at p. 13. Presumably, the toxic chemical to which Plaintiffs refer is sulfur dioxide. However, neither Plaintiffs' experts nor the documents Plaintiffs rely upon state that *any* level of exposure to sulfur dioxide would cause their symptoms. Plaintiffs' expert, chemist Meyer Rosen, actually said, "[m]ost authors report that levels of 10 to 50 ppm [parts per million] for 5 to 15 minutes will produce symptoms in non-asthmatic individuals" and "in one study, asthmatics exposed to the concentration of 0.1 to 0.5 ppm sulfur dioxide during mild exercise, experienced significant increases in pulmonary flow resistance." Pl. Exh. D at pp. 5-6.

According to the Hazardous Materials Accident Report, there is also a safety threshold, or "IDLH value," for the other two chemicals at issue--methyl mercaptan and chlorine. "The *IDLH (immediately dangerous to life and health) value* is an atmospheric concentration of any toxic, corrosive, or asphyxiate substance that poses an immediate threat to life or would cause irreversible or delayed adverse health effects, or would interfere with an individual's ability to escape from a dangerous atmosphere. The Environmental Protection Agency uses 10 percent of the IDLH value when determining that a release has reached a level of concern for public exposure." Pl. Exh. B at p. 11 n.13. "[T]he IDLH value for methyl mercaptan is 150 [ppm] in air." *Id* at p. 11. "The IDLH value for chlorine is 10 ppm." *Id.*

Plaintiffs failed to show, directly or inferentially, that their exposure exceeded safe levels for any of the released chemicals. The fact that Plaintiffs' experts and doctors opine that toxic exposure caused their injuries is insufficient to establish causation for the reasons stated in the Court's Order; neither the experts nor the doctors knew or attempted to ascertain Plaintiffs' level of exposure. Order, Sept. 20, 2007 at p. 14. They, instead, *presumed* cause and effect because there was a chemical release which could cause respiratory illness and Plaintiffs were symptomatic. But, the relevant authority establishes that the fact that Plaintiffs had symptoms consistent with toxic exposure is insufficient to establish the requisite causal connection. *See Conde v Velsicol Chemical Corp.,* 24 F.3d 809 (6th Cir. 1994); *Kolesar v United Agri Products, Inc.,* 412 F.Supp.2d 686 (W.D. Mich. 2006), *aff'd*, 2007 W.L. 2492402 (6th Cir. 2007); *Gass v Marriott Hotel Services,* 2007 W.L. 1343675, *12 (W.D. Mich. 2007).

Plaintiffs assert that the residual sulfur dioxide found during air quality testing proves that Plaintiffs were exposed to toxic levels. This claim is based on Rosen's assertion that an air monitoring report prepared by Roy Weston, Inc. for the Environmental Protection Agency ("the Weston Report") shows that sulfur dioxide above 0.5 ppm was present in certain areas 10 hours after the explosion. The Weston Report shows the following readings:

| Location | Reading | Time |
|---|---|---|
| Bridge Rd. and W. Jefferson Ave. | 1.69 | 17:10 |
| Bridge Rd. and W. Jefferson Ave. | 1.56 | 17:10 |
| W. Jefferson Ave. in front of plant | 2.23 | 17:20 |
| Pennsylvania Rd and Fort | 4.20 | 22:30 |

Pl. Exh. F, Table 1.

Plaintiffs' reliance upon the Weston Report is misplaced. Substantively, it is not clear whether three of the four readings show concentrations as high as Plaintiffs claim. Testers may have measured the three lowest readings in parts per *billion*, rather than the higher concentration of parts per *million* as Rosen states. (Defendant does not dispute that the 4.2 reading was in ppm.). The three lowest measurements were taken with a device called a Miran 205B Series SapphIRe, which, according to the Weston Report, is capable of detecting certain chemical concentrations in parts per billion. Def. MSJ Exh. 2 at p. 3-4 of 23. It is not clear whether the device is also capable of detecting concentrations in ppm or, if so, which measurement was used.

Even if all of the measurements were in ppm, however, Plaintiffs have not shown that they lived in sufficient proximity to the areas where the measurements were taken. Plaintiffs only vaguely state that the highest reading was "on Ms. Little's side of the plant," the lower readings were on the "Grosse Ile (Detroit River) side of the plant[,]" and Cowan and the McGowans "live within the tested area." Pl. br. at p. 6. However, each reading was taken at a specific intersection. There is no evidence of Plaintiffs' proximity to those intersections or how far from those intersections the readings apply.

Plaintiffs, nevertheless, imply that one could infer from the readings that there were toxic concentrations of sulfur dioxide near their respective homes at times when they would have been exposed. The leaps necessary to reach this conclusion, however, would not be inferences, but *presumptions of facts* for which there is no evidence. Plaintiffs have not demonstrated a palpable defect in the Court's finding that they failed to establish causation.

Plaintiffs' second claim of error is that the Court improperly required them to establish their level of exposure with precision. Plaintiffs also suggest that there is a lower burden of proof than the Court applied for claimants who suffer short-term, rather than long-term, exposure.

Plaintiffs misrepresent the Court's ruling. The Court explicitly acknowledged that Plaintiffs are *not* required to precisely establish their level of exposure; but, that they must present <u>some evidence</u> from which the trier of fact can infer exposure to toxic levels:

> Plaintiffs argue that they are not required to establish their level of exposure with mathematical precision. Plaintiffs are correct. *Gass*, 2007 W.L. 1343675 at *13. However, they are required to present some evidence from which the trier of fact can infer that they were exposed to harmful levels:
>
>> Scientific knowledge of the harmful level of exposure to a chemical, plus knowledge that the plaintiff was exposed to such quantities, are minimal facts necessary to sustain the plaintiffs' burden in a toxic tort case.
>
> *Id* (*quoting Curtis v M & S Petroleum, Inc.,* 174 F.3d 661, 670 (5th Cir. 1999)).

Order at pp. 11-12.

Contrary to Plaintiffs' claim, the same burden of proof was applied in the cases they rely upon--*Bonner v ISP Technologies, Inc.,* 259 F.3d 924 (8th Cir. 2001), *Mattis v Carlon Electrical Products*, 295 F.3d 856 (8th Cir. 2002), and *Westberry v Gislaved Gummi AB,* 178 F.3d 257 (4th Cir. 1999). In *Bonner*, the Court stated that, although "it was not necessary that Bonner's experts quantify the amount of [chemicals] to which she was exposed in order to demonstrate that she was exposed to a toxic level of [the chemicals,] . . . . **plaintiff [must] prove that she was exposed to a *quantity* of the**

6

toxin that 'exceeded safe levels.'"  259 F.3d at 931 (emphasis added)(citation omitted).  *Mattis*, likewise, stated that "a plaintiff [must] make a threshold showing that he or she **was exposed to toxic levels known to cause the type of injuries he or she suffered**."  295 F.3d at 860-861 (emphasis added).  And, the *Westberry* Court said "plaintiff must demonstrate the levels of exposure that are hazardous to human beings generally **as well as the plaintiff's actual level of exposure**." (emphasis added)(citation and quotation marks omitted).  The *Westberry* Court noted that precise quantification is often difficult or impossible, but found that circumstantial evidence that exposure exceeded safe levels was sufficient.  The *Westberry* plaintiff was required to establish that he was exposed to "high levels" of talc, and he did so with significant circumstantial evidence.

There is no basis to read *Bonner, Mattis*, or *Westberry* to directly or impliedly make a distinction in the proofs required for those subject to short-term, rather than long-term, exposure, and Plaintiffs do not cite any other authority which supports such a claim.

Plaintiffs failed to show a palpable defect via their second claim of error.

Plaintiffs' motion is **DENIED**.

**IT IS ORDERED.**

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  October 31, 2007

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on October 31, 2007.

s/Carol A. Pinegar
Deputy Clerk